Case 5:25-cv-00150   Document 21   Filed on 12/24/25 in TXSD   Page 1 of 15

United States District Court
Southern District of Texas
**ENTERED**
December 24, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| **MINGHAO CHEN,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 5:25-CV-00150 |
| | § | |
| **KRISTI NOEM,** *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM & ORDER

Pending before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, (Dkt. 1), filed by Petitioner Minghao Chen. Petitioner is a Chinese national who fled persecution in China and has been held in immigration detention for more than one year since his arrival in the United States. (Dkt. 1 at 1, 3; *see* Dkt. 13 at 2.) An immigration judge granted him withholding of removal on May 13, 2025, prohibiting his removal to China. (Dkt. 1 at 3–4.) Petitioner has remained in custody while DHS has sought to remove him to another country and has filed this habeas action seeking release. (*See* Dkt. 1.) Having considered the parties' filings and the applicable law, the Court concludes that Petitioner's detention has become unreasonably prolonged in violation of his due process rights.

Accordingly, the Petition for Writ of Habeas Corpus is GRANTED. Respondents are ORDERED to release Petitioner from custody on or before **December 26, 2025**, subject to reasonable conditions of supervision. The Parties must notify the Court of the status of Petitioner's release by **5 P.M. Central Standard Time (CST) on Monday, December 29, 2025**.

**Background**

Petitioner Minghao Chen ("Petitioner" or "Mr. Chen") is a 20-year-old citizen of China who fled his home country due to persecution he experienced at the hands of the Chinese government (Dkt. 1 at 3; *see* Dkt. 13 at 2; Dkt. 14 at 44–50.) Mr. Chen was apprehended at the U.S.-Mexico border on December 12, 2024, after having entered without inspection and has no criminal history. (*See* Dkt. 1 at 2–3, Attach. 1; Dkt. 13 at 3.)[1] After an asylum officer conducted a credible fear interview (CFI) and determined that Mr. Chen had a credible fear of persecution in China, the Department of Homeland Security (DHS) placed Mr. Chen in removal proceedings by filing a Notice to Appear that was dated January 24, 2025. (Dkt. 1 at 3; *see* Dkt. 13 at 3.)

Mr. Chen applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT) on March 20, 2025. (Dkt. 13, Attach. 1; Dkt. 14 at 84–94). Mr. Chen's application for withholding of removal under section 241(b)(3) of the Immigration and Nationality Act (INA) to China was granted by an Immigration Judge (IJ) on May 13, 2025. (Dkt. 1 at 3–4, Attach. 2.); *see* 8 U.S.C. § 1231(b)(3). In granting withholding of removal, the IJ determined that Mr. Chen was more likely than not to suffer persecution if removed to China. *See* 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 208.16. Additionally, the IJ simultaneously entered an order of removal in Mr. Chen's file. (*See* Dkt. 1 at 3–4, Attach. 2.) Both Mr. Chen and DHS waived appeal of the IJ's decision. (Dkt. 1 at 4; Dkt. 13 at 4.)

Withholding of removal is a form of immigration relief that requires the Government not to remove a noncitizen to a country where he has shown a sufficient likelihood of persecution, although it does not guarantee relief from removal to an alternative country. 8 U.S.C. §

---

[1] The Court will use "Attachment" to refer to sub-filings in accordance with official docket entries. The Court will use the page numbers auto-generated by CM/ECF in citations to the docket entries.

1231(b)(2)(E); *see generally* 8 U.S.C. § 1231(b) (providing the framework for designation). However, relatively few noncitizens granted withholding of removal have successfully been removed to alternative countries historically. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 537 (2021) (addressing the contention that "DHS often does not remove an alien to an alternative country if withholding relief is granted" and "only 1.6% of aliens who were granted withholding of removal were actually removed to an alternative country").

DHS policy has generally been to release noncitizens granted withholding of removal or CAT protection subject to conditions of supervision. *See* U.S. Dep't of Just., Detention and Release during the Removal Period of Aliens Granted Withholding of Removal or Deferral of Removal (Apr. 2, 2000), https://perma.cc/MDW6-RQS5. But in February of 2025, the DHS issued a policy directive instructing the Enforcement and Removal Operations (ERO) division of ICE to review the cases of noncitizens granted withholding of removal or protection under the Convention Against Torture (CAT) "to determine the viability of removal to a third country and accordingly whether the alien should be re-detained." February 18, 2025, DHS Policy Directive on Expedited Removal and Nondetained Docket (Feb. 18, 2025), https://perma.cc/T8TV-GT84; *see also D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 367 (D. Mass. 2025).

Mr. Chen has now been in ICE custody for over one year since he entered on December 12, 2024. (Dkt. 1 at 1; Dkt. 13 at 3.) On August 22, 2025, he received a Post Order Custody Review in which ICE determined that it would not release Mr. Chen and instead initiated the process of coordinating removal for Mr. Chen to a "third country," that is, a country other than the United States or a noncitizen's home country. (Dkt. 13 at 4, Attach 1.) Mr. Chen subsequently filed the instant habeas action on September 15, 2025. (Dkt. 1.) His petition asserts two claims for relief. (*Id.* at 6–9.) First, he claims that his detention has become indefinite in violation of the Due Process

Clause of the Fifth Amendment because his removal is not reasonably foreseeable. (*Id.*) Second, he claims that his detention is in violation 8 U.S.C. § 1231(a) of the Immigration and Nationality Act. (*Id.*) Mr. Chen asks the Court to grant declaratory and injunctive relief and order his immediate release from immigration detention. (*Id.*)

Respondents have moved to dismiss Petitioner's habeas petition for lack of subject-matter jurisdiction and failure to state a claim upon which relief may be granted. (Dkt. 13 at 1); *see* Fed. R. Civ. P. 12(b)(1), (b)(6). DHS argues that Mr. Chen's removal is reasonably foreseeable because "Petitioner is currently in the process of being scheduled for an interview to assist in identifying a third country for removal." (Dkt. 13 at 4.)

On November 7, 2025, the Court sought additional information to determine if any steps had been made by DHS to effectuate Mr. Chen's removal to a third country since the filing of the petition and Respondents' Motion on October 29, 2025. (Dkt. 16.) On November 21, 2025, both parties submitted supplemental responses to the Court on the issue of whether Petitioner's removal to a third country is reasonably foreseeable. (Dkts. 18, 19). In its response to the Court, Respondents confirmed that "no potential countries for removal have been identified and no agreements or arrangements to effectuate Petitioner's removal have been made at this time." (Dkt. 19 at 1.) As of the date of this Order, Petitioner remains detained at the Webb County Detention Center in Laredo, TX and there is no evidence that any country has communicated that it will accept Mr. Chen. (*See* Dkt. 1 at 2–3.)

## Legal Standards

A.  **28 U.S.C. § 2241**

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). 28 U.S.C. § 2241(c)(3) authorizes "any person to claim in federal court that he or she is being held 'in custody in violation of the Constitution or laws . . . of the United States.'" *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Accordingly, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear challenges to the lawfulness of immigration-related detention. *Id*. (citing 28 U.S.C. § 2241(c)(3)); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003); *Baez v. Bureau of Immigr. & Customs Enf't*, 150 F. App'x 311, 312 (5th Cir. 2005) (unpublished); *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005) (unpublished).

Habeas is "the basic method for obtaining review of continued *custody after* a deportation order had become final" and is available "as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas*, 533 U.S. at 687–88 (citation omitted). "Whether a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal is determinative of whether the detention is, or is not, pursuant to statutory authority. The basic federal habeas corpus statute grants the federal courts authority to answer that question." *Id*. at 699 (citing 28 U.S.C. § 2241(c)(3)).

Moreover, a Court is not required to hold a hearing when the habeas petition "raises only questions of law, or questions regarding the legal implications of undisputed facts." *Tijerina v.*

*Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989) (citations omitted); *see also Trejo v. Warden of ERO El Paso E. Montana*, 2025 WL 2992187, at *2 (W.D. Tex. Oct. 24, 2025) (citation omitted).

### B. Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). The burden of establishing subject-matter jurisdiction rests on the Petitioner. *See Hartford Ins. Group v. Lou–Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002); *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (citations omitted). "[A] motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted).

### C. Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). But when a party has filed for the writ of habeas corpus "[a] motion to dismiss for failure to state a claim is an inappropriate practice in habeas." *Miramontes v. Driver*, 243 F. App'x 855, 856 (5th Cir. 2007) (citing *Browder v. Director, Dep't of Corrections of Ill.,* 434 U.S. 257, 269 n.14 (1978)).

## Discussion

The Court considers Petitioner's claim that his post-removal-period detention by immigration authorities has become unreasonably prolonged in violation of the INA and his due process rights. (Dkt. 1.) Respondents counter that Petitioner's continued detention is lawful pursuant to the framework established by the Supreme Court for post-removal detention in

*Zadvydas v. Davis*, 533 U.S. 678 (2001), and that Petitioner's claims should be dismissed because (1) he has not been detained beyond the six-month presumptively reasonable period established in *Zadvydas*, and (2) there is a significant likelihood that Petitioner will be removed to a third country in the reasonably foreseeable future. (Dkts. 13, 19.) The Court addresses each of these arguments in turn after first examining its jurisdiction over Petitioner's claim.

### A. Subject Matter Jurisdiction

The primary federal habeas corpus statute confers federal subject matter jurisdiction over habeas petitions filed by noncitizens who claim they are being detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Zadvydas,* 533 U.S. at 687. However, the REAL ID Act of 2005 divested federal courts of jurisdiction over various important categories of immigration cases. *See* Pub. L. No. 109-13, Div. B, 119 Stat. 231 (2005); *codified as* 8 U.S.C. § 1252. Specifically, district courts may not review challenges to final orders of removal, the Attorney General's discretionary judgment to detain a noncitizen, or questions of law and fact "arising from any action taken or proceeding brought to remove an alien from the United States." *See* 8 U.S.C. §§ 1252(a)(5), (b)(9), (e); *Texas v. United States*, 126 F.4th 392, 417 (5th Cir. 2025); *Moreira v. Mukasey*, 509 F.3d 709, 712 (5th Cir. 2007). Additionally, no federal court may review claims "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g).

But the Supreme Court has recognized a distinction between challenges to individual, discretionary detention decisions—which are prohibited—and "challenges to the statutory framework that permits [an] alien's detention without bail"—which remain cognizable under the habeas statute. *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (internal alterations omitted) (citing *Demore*, 538 U.S. at 516). Moreover, the Supreme Court has rejected a broad reading of

these provisions, cautioning that that "[i]nterpreting "arising from" in this extreme way would also make claims of prolonged detention effectively unreviewable." *Id.* at 293. Therefore, federal courts retain "jurisdiction to review [a noncitizen's] detention insofar as that detention presents constitutional issues," *Oyelude,* 125 F. App'x at 546; *see also Nielsen v. Preap,* 586 U.S. 392, 401–02 (2019); *Maldonado v. Macias*, 150 F. Supp. 3d 788, 794 (W.D. Tex. 2015) ("[E]ven after the passage of the REAL ID Act, district courts retain the power to hear statutory and constitutional challenges to civil immigration detention under § 2241 when those claims do not challenge a final order of removal, but instead challenge the detention itself.").

Moreover, "Section 1252(g) does not bar courts from reviewing an alien detention order, because such an order, 'while intimately related to efforts to deport, is not itself a decision to 'execute removal orders' and thus does not implicate section 1252(g).'" *Cardoso v. Reno*, 216 F.3d 512, 516–17 (5th Cir. 2000) (citation omitted); *see also Sagastizado v. Noem (Sagastizado II)*, 2025 WL 2957002, at *7–8 (S.D. Tex. Oct. 2, 2025). Likewise, "where review of an agency determination involves neither a determination as to the validity of the [petitioner's] deportation order[] or the review of any question of law or fact arising from their deportation proceedings, § 1252(a)(5) and (b)(9) should not operate as a bar to the district court's review." *Duarte v. Mayorkas*, 27 F.4th 1044, 1056 (5th Cir. 2022).

Mr. Chen contests only his post-removal-period detention while DHS attempts to remove him to a third country rather than any aspect of his underlying removal order or the decision by DHS to execute it. Thus, his claim is not barred, and the Court retains jurisdiction to determine whether his continued detention by DHS as it attempts to remove him to a third country violates his due process rights. *See Villanueva v. Tate*, 2025 WL 2774610, at *5–6 (S.D. Tex. Sep. 26,

2025) ("challenges [to] the government's authority to hold [Petitioner] in detention indefinitely while it tries to find a third country that will accept him . . . [are] not barred.")

### B. Limits on Post-Removal-Period Detention Under *Zadvydas*

Mr. Chen argues that that his post-removal-order detention by immigration authorities has become unreasonably prolonged in violation of his due process rights given that his detention has stretched for over 220 days, or approximately eight months, since his removal order became final on May 13, 2025. (*See* Dkt. 1.) Pursuant to § 1231, once an IJ issues a removal order and that order becomes "final," the Attorney General has ninety days to affect the detainee's departure from the United States. *See* 8 U.S.C. § 1231(a)(1)(A); *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006) *cert. denied*, 549 U.S. 1132 (2007). The beginning of the removal period is calculated to be the latest of "(i) The date the order of removal becomes administratively final. (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order. (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. § 1231(a)(1)(B). In general, during this 90-day removal period, the detainee must remain detained. 8 U.S.C. § 1231(a)(2). If the detainee is not removed within that 90-day period, he may become eligible for supervised release until removal can be accomplished or DHS may continue to detain him for "a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689; *see also Clark v. Suarez Martinez*, 543 U.S. 371, 385 (2005); 8 U.S.C § 1231(a)(3).

But post-removal-period detention must comport with constitutional limits. The Supreme Court has recognized "permitting indefinite detention of an alien would raise a serious constitutional problem" and that "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process]

Clause protects." *Zadvydas,* 533 U.S. at 690.  Thus, the Supreme Court held in *Zadvydas* that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal.  *Id.* at 699. Therefore, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* (citations omitted).

In order to guide lower courts reviewing the reasonableness of continued detention, the Supreme Court determined that there is a presumably reasonable period of six months of detention from the time that a removal order becomes final.[2] *Id.* at 701. After six months have elapsed, once a noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If the respondents do not offer sufficient rebuttal evidence once a habeas petitioner has made such a showing, then the court should grant the writ and order the habeas petitioner released under the *Zadvydas* framework. *See id.*; *but see Andrade*, 459 F.3d at 543–44 (finding that petitioner had failed to meet his initial burden when he offered "nothing beyond conclusory statements").

Respondents contend that Petitioner's claims should be dismissed because he has failed to make the two-part showing required under *Zadvydas*. (Dkt. 13.) They argue (1) he has been detained less than the six-month presumptively reasonable period, and (2) he has failed to provide a good reason to believe that his remove is not likely in the foreseeable future. (*Id*.)

### 1. Length of Petitioner's Detention

In their motion, Respondents first assert that Mr. Chen's claims should be dismissed because he has not been detained beyond the six-month presumptively reasonable period

---

[2] Courts, including this one, have understood the six-month presumption to be a period of 180 days which comports with DHS's post-removal custody review procedures. *See Sagastizado II*, 2025 WL 2957002, *16; *Villanueva*, 2025 WL 2774610, at *2; 8 C.F.R. § 241.4(k)(2)(ii).

established in *Zadvydas*. (Dkt. 13 at 4–7.) While correct that Mr. Chen had not reached six months of post-removal-period detention as of the time his petition was filed with the Court or as of the time of Respondent's motion, Mr. Chen has now been detained as of the date of this Order past six months since his removal order became final on May 13, 2025.[3] Thus, having surpassed the six-month presumption of reasonableness under *Zadvydas*, the analysis shifts to whether Mr. Chen has provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" and whether Respondents have responded "with evidence sufficient to rebut that showing." *Zadvydas,* 533 U.S. at 701.

### 2. Foreseeability of Petitioner's Removal to a Third Country

The Court now turns to whether Petitioner has provided a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future and if so, whether Respondents have submitted sufficient evidence to rebut that showing. Respondents first argue that Mr. Chen has made only "conclusory allegations" that his removal is not reasonably foreseeable and thus failed to meet the required showing. (Dkt. 13 at 6; Dkt. 19 at 2); *see also Andrade*, 459 F.3d at 543–44. The Court rejects this, finding that Mr. Chen has met his burden to

---

[3] As in *Sagastizado II*, the Court rejects any argument that Petitioner's claim should be dismissed on the ground that it was brought prior to the conclusion of the six-month presumptively reasonable period. *See* 2025 WL 2957002, at *13 n.3 (rejecting this argument on the ground that there is no "controlling precedent or legal support to indicate that six months must have elapsed *at the time of filing*" and concluding that the six-month period is a rebuttable not preclusive presumption); *see also Villanueva*, 2025 WL 2774610, at *9 ("nothing in *Zadvydas* precludes a challenge to detention before the presumptively constitutional time period has elapsed"); *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 397 (D. N.J. 2025) (recognizing that the *Zadvydas* presumption is rebuttable and that "[t]o hold otherwise would condone detention in cases where removal is not reasonably foreseeable or even functionally impossible, so long as it did not exceed six months." (citations omitted)).

provide a good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future.

Mr. Chen has submitted allegations that his "removal is not reasonably foreseeable because DHS has tried to remove Petitioner for several months since May 13, 2025" and been unsuccessful. (Dkt. 1 at 1.) Mr. Chen has also stated that he cannot be removed to China because of his grant of withholding of removal to China and the fact that China and the United States do not have a removal agreement in place. (Dkt. 18 at 1–2.) Moreover, Mr. Chen has stated that Respondents have not identified any countries to which they intend to remove Mr. Chen, making his removal not reasonably foreseeable as a result. *Id.*

For a petitioner to show that there is "a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" the petitioner is not required to "show the absence of *any* prospect of removal—no matter how unlikely or unforeseeable," *See Gomez v. Mattos*, 2025 WL 3101994, at *5 (D. Nev. Nov. 6, 2025) (quoting *Zadvydas*, 533 U.S. at 701–02). The fact that Mr. Chen has been granted withholding of removal from his native country of China in of itself makes his likelihood of removal from the United States far less likely. *See Johnson,* 594 U.S. at 537 ("only 1.6% of aliens who were granted withholding of removal were actually removed to an alternative country"); *Zavvar v. Scott*, 2025 WL 2592543, at *7 (D. Md. Sept. 8, 2025) ("A grant of withholding of removal 'substantially increases the difficulty of removing" an individual." (quoting *Munoz-Saucedo v. Pittman,* 789 F. Supp. 3d 387, 398 (D.N.J. 2025))).

Moreover, as Mr. Chen asserts, the fact that DHS has not identified a third country that is willing to accept him makes his removal even more impracticable. *See Trejo*, 2025 WL 2992187, at *5 (finding removal not reasonably foreseeable because "ICE has not identified a third country that will accept him"). Accordingly, under similar factual circumstances to Mr. Chen, courts have

12 / 15

found that a petitioner has met their burden by offering proof of a grant of withholding of removal and a lack of assurances that a third country will accept them. *See, e.g., Salazar-Martinez v. Lyons*, 2025 WL 3204807, at *2 (D.N.M. Nov. 17, 2025) (citations omitted); *Trejo*, 2025 WL 2992187, at *5 (W.D. Tex. Oct. 24, 2025); *Garcia-Aleman v. Thompson*, 2025 WL 3534806, at *5 (W.D. Tex. Nov. 24, 2025), *report and recommendation adopted*, 2025 WL 3532179 (W.D. Tex. Dec. 9, 2025). Therefore, Mr. Chen's evidence that he remains detained with his removal to his native country of China prohibited by law and no assurances that he can be removed to a third country is sufficient for the Court.

Thus, upon finding that Mr. Chen has provided a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Court turns to Respondents' evidence. Respondents argue that even if Mr. Chen has shifted the burden to the Respondents to justify his continued detention, the Court should find that there is a significant likelihood of removal because "ERO is actively working with other agencies to identify and secure acceptance from a third country for his removal." (Dkt. 13 at 7.) But by Respondents' own admission, "no potential countries for removal have been identified and no agreements or arrangements to effectuate Petitioner's removal have been made at this time." (Dkt. 19 at 1.)

Respondents have had over 220 days, or eight months, to work on removing Mr. Chen to a third country and have nothing to show for it. All the Respondents can proffer is that Mr. Chen "is in the process of being scheduled for an interview to assist in further identifying other possibilities for third country of removal." (Dkt. 13, Attach. 1 at 2.) Not only is this a far cry from the evidence required to rebut Mr. Chen's showing, it raises serious concerns about what Respondents have been doing for the last eight months that Mr. Chen has remained detained. This lack of any progress towards removal while Mr. Chen has remained detained indicates that his

removal is not reasonably foreseeable under even the most generous understanding of the standard. *See Misirbekov v. Venegas,* 2025 WL 3033732, at *2 (S.D. Tex. Oct. 29, 2025) (finding that a "lack of progress in removing Petitioner makes removal unlikely in the foreseeable future" for a petitioner detained over nine months post-removal). "[A] remote possibility of an eventual removal is not analogous to a significant likelihood that removal will occur in the reasonably foreseeable future." *Balouch v. Bondi*, 2025 WL 2871914, at *3 (E.D. Tex. Oct. 9, 2025) (citation omitted).

Thus, Mr. Chen's continued detention violates due process because there is no significant likelihood of his removal in the reasonably foreseeable future. Mr. Chen has been detained for more than one year, with over 220 days of that detention occurring during the post-removal-period. During all that time, it appears that Respondents have made few efforts and attained no meaningful progress in effectuating his removal to a third country from their own admissions. The Constitution forbids such an infringement on liberty under due process. Therefore, Mr. Chen's continued detention is unconstitutional and in violation of the INA.

## Conclusion

For the forgoing reasons, Petitioner's Petition for Writ of Habeas Corpus, (Dkt. 1), is GRANTED. Respondents' Motion to Dismiss Petition for Writ of Habeas Corpus, (Dkt. 13), is DENIED.

Respondents are hereby ORDERED to release Petitioner from custody on or before **December 26, 2025**, subject to reasonable conditions of supervision. Respondents are also ORDERED to notify Petitioner's counsel of the exact location and exact time of his release as soon as practicable and **no less than three hours before release**. The Parties must notify the Court of the status of Petitioner's release and any conditions of supervision by **5 P.M. Central Standard Time (CST) on Monday, December 29, 2025.**

The Court's prior Order, (Dkt. 9), that Respondents notify Petitioner's counsel and the Court of any planned removal of Petitioner from the United States, at least five (5) days before any such removal, REMAINS IN PLACE. The Court further ORDERS that Petitioner cannot be re-detained without a material change in circumstances.

IT IS SO ORDERED.

SIGNED this December 24, 2025.

Diana Saldaña
United States District Judge